UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DAVID CARABALLO,

                        Plaintiff,

-against-

DEPARTMENT OF CORRECTIONS CITY OF NEW YORK, et al.,

                        Defendants.

22-cv-00971 (JLR)

**MEMORANDUM**
**OPINION AND ORDER**

JENNIFER L. ROCHON, United States District Judge:

        Plaintiff David Caraballo, proceeding *pro se* and *in forma pauperis*, brings this action against the City of New York and individual officers at the Department of Corrections, including Vincent Schralda, Captain Reyez, Captain Hamlet, Warden Carter (collectively, "Defendants"), alleging that Defendants violated his constitutional rights with respect to the pretrial conditions at the Vernon C. Bain Center ("VCBC") in December 2021 during an influx of COVID-19 cases. ECF No. 2 ("Compl.") at 2, 4. Now before the Court is Defendants' motion to dismiss the Complaint on several grounds, including that Plaintiff failed to exhaust the administrative remedies available to him, and that the Complaint otherwise fails to state a claim upon which relief may be granted. ECF No. 18 ("Br."). For the reasons set forth below, Defendants' motion is GRANTED.

BACKGROUND

        The following facts alleged in the Complaint are taken to be true for the purposes of this motion. *See, e.g.*, *Stadnick v. Vivint Solar, Inc.*, 861 F.3d 31, 35 (2d Cir. 2017). Plaintiff alleges that, beginning on December 20, 2021, his constitutional rights were violated by the conditions in the VCBC. Compl. at 4. Plaintiff specifically alleges that he and other detainees were housed in a unit across from "quarantine housing" from December 20-23, 2021, when "omicron [a

subvariant of COVID-19] . . . breached the building" on December 21, 2021. *Id.* He also alleges that he and other inmates were not "receiving cleaning products and masks" during this time. *Id.* He further claims that he and other inmates "feel like [they] are exposed to omicron due to the fact that" the corrections officers were moving between housing units without regard to whether those units contained people with active COVID-19 virus or not. *Id.* Finally, he alleges that clinic and mail services were slow or delayed due to staff shortages. *Id.*

On December 28, 2021, Plaintiff and three other inmates delivered the Complaint to VCBC authorities to be mailed to the Court for filing. *Id.* at 6. On February 2, 2022, Plaintiff's claim was severed from the other parties named in the Complaint.[1] ECF No. 1. On August 5, 2022, Defendants filed the instant motion to dismiss. ECF No. 16. Plaintiff was served with those papers by mail on that same date. ECF No. 19. To date, Plaintiff has not responded to Defendants' motion.

## LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In deciding a motion to dismiss, the Court must "accept[ ] all factual allegations as true and draw[ ] all reasonable inferences in the plaintiff's favor." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 110-11 (2d Cir. 2010) (quoting *Shomo v. City of New York*, 579 F.3d 176, 183 (2d Cir. 2009)). Additionally, "[i]n ruling on a motion pursuant to Fed. R. Civ. P. 12(b)(6), the duty of a court is merely to assess the legal feasibility of the complaint, not to assay the weight of the

---

[1] Plaintiff's Complaint is identical to the complaints filed by inmates in three other actions: Case No. 1:22-cv-0870 (LTS); 1:22-cv-0972 (MKV); and 1:22-cv-1010 (LTS). Each inmate's claims were separated into three separate civil actions prior to Defendants' filing of the motion to dismiss. *See* ECF No. 1.

evidence which might be offered in support thereof." *Hogan v. Fischer*, 738 F.3d 509, 514 (2d Cir. 2013). That is, the facts must be sufficient to "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

"Where, as here, the complaint was filed *pro se*, it must be construed liberally with 'special solicitude' and interpreted to raise the strongest claims that it suggests." *Hogan*, 738 F.3d at 515. "Nonetheless a *pro se* complaint must state a plausible claim for relief." *Id.* And mere legal conclusions, or "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010) (internal citations and quotation marks omitted). Additionally, a plaintiff's failure to respond to a motion to dismiss is not alone sufficient reason to dismiss the complaint. *See McCall v. Pataki*, 232 F.3d 321, 323 (2d Cir. 2000).

## DISCUSSION

Defendants make two primary arguments in their motion to dismiss: first, that Plaintiff has failed to exhaust his administrative remedies, as required under the Prison Litigation Reform Act ("PLRA"), and second, that Plaintiff's claims otherwise fail to state a claim upon which relief may be granted because the facts alleged do not establish a "sufficiently serious" risk to his health to give rise to a constitutional violation. Br. at 4, 11-12. They also argue that Plaintiff fails to (a) allege a basis for municipal liability, (b) allege personal involvement necessary to hold the individuals liable, and (c) demonstrate an entitlement to emotional damages. Br. at 17-19. The Court will address each argument in turn.

1. **Exhaustion of Administrative Remedies**

Under the PLRA, "[n]o action shall be brought with respect to prison conditions under [§ 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other

correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).  "The PLRA requires 'proper exhaustion' of administrative remedies, meaning exhaustion in 'compliance with an agency's deadlines and other critical procedural rules.'"  *Lucente v. Cnty. of Suffolk*, 980 F.3d 284, 311 (2d Cir. 2020) (quoting *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006)); *see also Macias v. Zenk*, 495 F.3d 37, 44 (2d Cir. 2007).  Plaintiffs are "not required to specially plead or demonstrate exhaustion in their complaints," since exhaustion is an affirmative defense.  *Jones v. Bock*, 549 U.S. 199, 212 (2007).  Nevertheless, failure to exhaust may still be the basis for failure to state a claim where it appears "on the face of the complaint."  *Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 74 (2d Cir. 1998) (discussing affirmative defenses that appear on the face of the complaint); *see, e.g.*, *Hickman v. City of New York*, No. 20-cv-4699 (RA) (OTW), 2021 WL 3604786, at *3 (S.D.N.Y. Aug. 12, 2021) (dismissing PLRA complaint for failure to exhaust); *Antrobus v. Warden of GRVC*, No. 11-cv-05128 (JMF), 2012 WL 1900542, at *2-3 (S.D.N.Y. May 25, 2012) (same).  However, "prisoners are exempt from the exhaustion requirement when administrative remedies are [objectively] unavailable."  *Lucente*, 980 F.3d at 311 (internal citation and quotation marks omitted).

In New York City, including at the VCBC, the procedures for exhaustion are governed by the Department of Correction's Inmate Grievance Procedure ("IGRP").[2]  *See, e.g.*, *Hudson v. City of New York*, No. 15-cv-4920 (PAC) (HBP), 2016 WL 3976399, at *3 (S.D.N.Y. June 23,

---

[2] The Court takes judicial notice of the IGRP.  *See, e.g.*, *Massey v. City of New York*, No. 20-cv-5665 (GBD) (DF), 2021 WL 4943564, at *6 (S.D.N.Y. Aug. 30, 2021), *report and recommendation adopted*, No. 20-cv-5665 (GBD) (DF), 2021 WL 4459459 (S.D.N.Y. Sept. 29, 2021); *Sanders v. City of New York*, No. 16-cv-7246 (PGG), 2018 WL 3117508, at *4 n.1 (S.D.N.Y. June 25, 2018) ("It is a common practice in this District to take judicial notice of the version of the IGRP in effect at the time of the events giving rise to [a prisoner's] claim." (citation and internal quotation marks omitted)).  Directive-3376R-A was in effect in December 2021, and therefore is the governing procedure in this action.  *See* N.Y.C. Dep't of Correction, Directive 3376 (effective Dec. 10, 2018), https://www1.nyc.gov/assets/doc/downloads/directives/Directive_3376R-A.pdf (last accessed October 28, 2022).

2016), *report and recommendation adopted*, No. 15-cv-4920 (PAC) (HBP), 2016 WL 3982512 (S.D.N.Y. July 21, 2016). "The IGRP applies to '[a]ny inmate who is directly and personally affected by an issue, condition, practice, service, or lack of an accommodation with regard to any issue that may arise in connection with their incarceration or action relating to their confinement.'" *Massey v. City of New York*, No. 20-cv-5665 (GBD) (DF), 2021 WL 4943564, at *7 (S.D.N.Y. Aug. 30, 2021), *report and recommendation adopted*, No. 20-cv-5665 (GBD) (DF), 2021 WL 4459459 (S.D.N.Y. Sept. 29, 2021) (citing IGRP § I). This includes complaints about access to medical care. *Id.*

Under the IGRP, an inmate must first file a grievance form with the Office of Constituent and Grievance Services ("OCGS") or call 311. IGRP § V(F)-(J). Within seven days of the submission of the complaint, the Grievance Coordinator then reviews the complaint and may "either dismiss and close the grievance, refer the submission to the appropriate entity, or investigate the grievance and propose a resolution to the inmate." IGRP § VI(A)(1). "The Grievance Coordinator shall [then] meet with the inmate to review the proposed resolution." *Id.* The inmate may decide to reject and appeal the proposed resolution to the Commanding Officer. IGRP § VII(A). Within five days, the Commanding Officer must review and decide the appeal. IGRP § VII(B). "If the inmate does not accept the Commanding Officer's disposition and wishes to appeal to the Division Chief, the inmate shall indicate so . . . within two (2) business days of notification of the Commanding Officer's disposition." IGRP § VII(D). "Lastly, if the inmate is dissatisfied with the decision of the Division Chief, he may appeal to the Central Office Review Committee ("CORC")." *Massey*, 2021 WL 4943564, at *7 (citing IGRP § IX(A)). The CORC decision is final. *Id.*

Here, Plaintiff makes no reference to the grievance process in the Complaint. Of course, he is under no obligation to plead exhaustion. *See Jones*, 549 U.S. at 212. Nevertheless, the timeline of events that he does plead establishes that he failed to exhaust his administrative remedies. Specifically, he alleges that as of December 21, 2021, "omicron . . . breached" the VCBC. Compl. at 4. He also references December 20-23, 2021 as the dates on which the events underlying his Complaint occurred. *See id.* The Complaint was delivered to VCBC authorities to be filed with the Court only five days later, on December 28, 2021. *Id.* The IGRP process involves at least three levels of appeal and decisions that certainly take more than five days to fully complete. *See Mateo v. O'Connor*, No. 08-cv-11053 (RJH), 2010 WL 3199690, at *3 (S.D.N.Y. Aug. 12, 2010) ("Exhaustion would have been impossible in so short a time frame."). Courts have concluded that as much as 21 days between the underlying event and filing of the complaint clearly indicates that the petitioner failed to exhaust. *See Price v. City of New York*, No. 11-cv-6170 (TPG), 2012 WL 3798227, at *3 (S.D.N.Y. Aug. 30, 2012) ("Furthermore, given the timelines for the grievance procedure outlined in the DOC's regulations, it would have been impossible for him to do so in the 21 days between the alleged incident and the filing of his complaint."); *see also Harvin v. Chapdelaine*, No. 3:16-cv-1616 (VAB), 2017 WL 3725611, at *5 (D. Conn. Aug. 29, 2017) ("Because it is also apparent from the face of the Complaint, due to the dates of the alleged events and the date that [petitioner] signed the complaint, that [petitioner] could not have exhausted his administrative remedies before filing this action, the Court dismisses all of his claims in the Complaint without prejudice under the PLRA."). Here, it would have been impossible for Plaintiff to exhaust the grievance procedures outlined in the IGRP in five days. Therefore, it is clear from the face of the Complaint that Plaintiff failed to exhaust the applicable administrative remedies, necessitating dismissal of the Complaint here.

### 2. Failure to State a Claim Under 42 U.S.C. § 1983

Even if Plaintiff had exhausted his administrative remedies, which the Court finds he has not, Defendants argue that the Complaint fails to state a claim. "It is settled that § 1983 authorizes actions to enforce the rights of individuals under federal statutes as well as under the Constitution." *Morris-Hayes v. Bd. of Educ. of Chester Union Free Sch. Dist.*, 423 F.3d 153, 158 (2d Cir. 2005). To establish a claim under § 1983, a plaintiff must show that the defendant was acting under color of state law and deprived him or her of a constitutional right. *See Palmieri v. Lynch*, 392 F.3d 73, 78 (2d Cir. 2004). While Defendants do not dispute that Plaintiff has alleged Defendants were acting under color of state law, Defendants do argue that Plaintiff has not sufficiently pleaded the violation of any legal right. Br. at 11-12. To be sure, the instant Complaint does not specify what law or constitutional provision prison officials are alleged to have violated. Nevertheless, the Second Circuit has made clear that claims of pretrial detainees regarding conditions of confinement are governed by the Due Process Clause of the Fourteenth Amendment. *See Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017). To establish a claim under § 1983, a pretrial detainee must satisfy two prongs: first, he must show "that the challenged conditions were sufficiently serious to constitute objective deprivation of the right to due process," *i.e.*, the "objective prong"; second, he must show that "the officers acted with deliberate indifference to the challenged conditions," *i.e.*, the "subjective prong." *Id.*

In order to establish the first prong, an objective deprivation, "'the inmate must show that the conditions, either alone or in combination, pose an unreasonable risk of serious damage to his health,' which includes the risk of serious damage to 'physical and mental soundness.'" *Id.* at 30 (quoting *Walker v. Schult*, 717 F.3d 119, 125 (2d Cir. 2013) and *LaReau v. MacDougall*, 473 F.2d 974, 978 (2d Cir. 1972)). "Courts have long recognized that conditions posing an elevated

7

chance of exposure to an infectious disease can pose a substantial risk of serious harm." *Chunn v. Edge*, 465 F. Supp. 3d 168, 200 (E.D.N.Y. 2020). Indeed, the Second Circuit has recognized that "correctional officials have an affirmative obligation to protect inmates from infectious disease." *Jolly v. Coughlin*, 76 F.3d 468, 477 (2d Cir. 1996). In turn, since the COVID-19 pandemic began, courts have acknowledged that "under certain circumstances, an inmate's exposure to COVID-19 could 'pose an unreasonable risk of serious damage to his health,' thereby satisfying the objective prong." *Shomo v. Dep't of Corr. & Cmty. Supervision*, No. 21-cv-00128 (PMH), 2022 WL 1406726, at *12 (S.D.N.Y. May 4, 2022) (citation omitted); *Fernandez-Rodriguez v. Licon-Vitale*, 470 F. Supp. 3d 323, 349 (S.D.N.Y. 2020) ("Put simply, COVID-19 stands with the roster of infectious diseases from which 'correctional officials have an affirmative obligation to protect inmates.'") (citation omitted); *see also Chunn*, 465 F. Supp. 3d at 200-01 (collecting cases). Those circumstances include where a detainee has an underlying medical condition, making him "particularly vulnerable" to unreasonable risk of serious damage to his health. *See Herbert v. Smith*, No. 20-cv-06348 (PMH), 2021 WL 3292263, at *9 (S.D.N.Y. Aug. 2, 2021).

In order to establish the second prong, deliberate indifference, "the pretrial detainee must prove that the defendant-official acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the defendant-official knew, or should have known, that the condition posed an excessive risk to health or safety." *Darnell*, 849 F.3d at 35. "Mere negligence by the officials, however, cannot satisfy the subjective prong." *Ransom v. Banks*, No. 1:20-cv-10232 (MKV), 2022 WL 769344, at *6 (S.D.N.Y. Mar. 14, 2022); *see also Darnell*, 849 F.3d at 36.

Plaintiff has alleged that he "feel[s] like [he is] exposed to Omicron due to the fact that officer[s] are cross touring from Quarantine houses to Negative houses." Compl. at 4. He also has alleged that the "cross touring" of corrections officers between the quarantined unit and the non-quarantined unit, the delay of mail and clinic services, and general lack of supplies, are "placing [his] health, [his] life in danger." *Id.* Despite these allegations, he does not allege that he knows he was exposed to COVID-19 – only that he may have been exposed due to both his proximity to the "quarantine housing" unit and that officers were going between units. *Id.* He also does not allege facts that show whether the officers "cross touring" appeared to have symptoms themselves, or whether and for how long they interacted with him, if at all. *See Morgan v. Parmiter*, No. 9:22-cv-0147 (BKS) (CFH), 2022 WL 913188, at *3 (N.D.N.Y. Mar. 29, 2022) (dismissing a similar complaint where the inmate failed to allege facts showing exposure to COVID-19). Plaintiff has also not made a specific allegation that he is at risk of serious damage to his health if he were to be exposed to or contract COVID-19,[3] or that he has any underlying conditions that make him particularly vulnerable. *See Herbert*, 2021 WL 3292263, at *9 (noting that COVID-19 exposure may be an objective deprivation of a constitutional right for the "particularly vulnerable"). Nor does he allege that he contracted COVID-19. *See Morgan*, 2022 WL 913188, at *3 (citing *Pike v. Cerliano*, No. 6:20-cv-619, 2021 WL 3704377, at *3 (E.D. Tex. Aug. 3, 2021) (dismissing prisoner's conditions-of-confinement claim based upon two instances of officials not wearing masks because "the general fear of contracting COVID-19 or that COVID-19 is spreading" is insufficient to state a claim

---

[3] The Complaint does reference that one of the inmates who filed the initial complaint, Buddy Oscar, has asthma, which he alleges was triggered by the COVID-19 exposure. Compl. at 4. However, Mr. Oscar's case was severed from Plaintiff's case, *see* ECF No. 1, and the Complaint does not contain any allegations about any underlying conditions on the part of Plaintiff here.

9

under § 1983), *report and recommendation adopted*, 2021 WL 3700252 (E.D. Tex. Aug. 19, 2021)). Overall, the allegations in the Complaint are not specific to Plaintiff; he does not allege specifically "how, when, where, or for how long he faced a risk of contracting COVID-19, or any facts specific to himself at all." *Shomo*, 2022 WL 1406726, at *12.

Even if Plaintiff had sufficiently alleged that he was objectively deprived of his rights, Plaintiff's failure to allege that the prison officials acted with deliberate indifference is also fatal to his Complaint. The officials certainly knew of the risks from the transmission of COVID-19, particularly in a confined setting like pretrial detention. *See Fernandez-Rodriguez*, 470 F. Supp. 3d at 352. However, Plaintiff does not allege that, in spite of this knowledge, Defendants either "intentionally . . . impose[d] the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee . . . ." *Darnell*, 849 F.3d at 35. Plaintiff does not allege any specific facts that suggest Defendants acted recklessly. To the contrary, he affirmatively alleges that inmates who had contracted the COVID-19 virus were kept in a separate unit – "a covid quarantine housing unit." Compl. at 4. Plaintiff was housed in a "Negative" unit of inmates – that is, inmates who were "Negative" when tested for COVID-19. Compl. at 4. These specific allegations do not tend to show recklessness on the part of Defendants. To the extent that officers were "cross touring" between the units, Plaintiff does not allege that the officers did not take precautions, such as wearing masks or keeping a safe distance. However, even if Plaintiff had made those allegations, they would still be insufficient to state a claim. *See Monroe v. Jouliana*, No. 20-cv-6807 (VB), 2021 WL 6052162, at *4 (S.D.N.Y. Dec. 20, 2021) (failure to wear a mask, social distance, and sufficiently clean was insufficient to state § 1983 claim).

10

Finally, Plaintiff's other allegations about the lack of masks and cleaning supplies are conclusory at best, and do not alone support a claim for deliberate indifference.[4] *See Ransom*, 2022 WL 769344, at *7 (failure to provide a mask at intake was the "type of vague allegation[ ] that [has] not sustained a claim for a constitutional violation"). Therefore, Plaintiff's allegations are insufficient to state a claim for deliberate indifference, and thus a constitutional violation under § 1983.[5]

### 3. Failure to Allege Personal Involvement

Defendants also argue that the Complaint should be dismissed because Plaintiff has failed to adequately plead that each individual Defendant was involved in Plaintiff's claims. Br. at 18. The Court agrees. Plaintiff has named four individuals as Defendants in this action: Vincent Schralda, Captain Reyez, Captain Hamlet, and Warden Carter. Their names are not mentioned anywhere in the fact section of Plaintiff's Complaint. The Complaint does not contain any allegations as to how these officers were involved in the constitutional claims Plaintiff raises. "[A] plaintiff must plead that each [g]overnment-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. That Defendants hold supervisory or otherwise high positions at the VCBC is insufficient alone to allege personal involvement. *See Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020). Absent any specific allegations as to the individual Defendants' personal involvement in Plaintiff's claims, the Complaint fails to state a § 1983 claim as to those Defendants.

---

[4] Plaintiff's vague allegations as to unspecified delays in mail and medical services are equally non-specific and conclusory. *See Roldan v. Kang*, No. 13-cv-6889 (JGK), 2016 WL 4625688, at *4 (S.D.N.Y. Sept. 6, 2016) (dismissing *pro se* § 1983 complaint with conclusory allegations as to injury).

[5] Because the Court concludes that Plaintiff failed to state a claim for a constitutional violation under § 1983, the Complaint also fails to state a claim for municipal liability. *See Rodriguez v. City of New York*, No. 10-cv-4404 (PAE), 2012 WL 234380, at *4 (S.D.N.Y. Jan. 24, 2012) (noting need to plead a violation of constitutional rights in order to plead municipal liability).

### 4. Failure to Plead a Physical Injury

Finally, Defendants argue that Plaintiff is not entitled to emotional damages. Br. at 19-20. Under the PLRA, 42 U.S.C. § 1997e(e), "[n]o federal civil action may be brought by a prisoner confined in a jail . . . for mental or emotional injury suffered while in custody without a prior showing of physical injury . . . ." The Second Circuit has concluded that "without a showing of physical injury, [a complaint] does not comply with § 1997e(e), and is thus subject to dismissal for failure to state a claim . . . ." *Walker*, 45 F.4th at 615 (internal quotation marks and citations omitted); 42 U.S.C. § 1997e(e) (no recovery by a prisoner for mental or emotional injury while in custody without a prior showing of physical injury or the commission of a sexual act). Here, Plaintiff has alleged only the following as an injury: "health conditions, mental health & pain and suffering, human rights neglection." Compl. at 5. This allegation is ambiguous as to whether Plaintiff suffered a *physical* injury. For relief, Plaintiff also requests "a small compensation [which] would pay off the times where we tried to handle our outside situations and lawsuits due to the lack of mail services." *Id.* This allegation does not suggest that Plaintiff is requesting damages for physical injury. Accordingly, Plaintiff has failed to state a claim for the emotional distress damages he seeks in his Complaint. *See Walker*, 45 F.4th at 615.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is granted. However, leave to amend should be freely granted particularly for *pro se* litigants. *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000). Accordingly, IT IS HEREBY ORDERED that Plaintiff shall file an Amended Complaint no later than **January 10, 2023**. Failure to timely file the Amended Complaint may subject this action to dismissal for failure to prosecute.

In the Amended Complaint, Plaintiff shall address all deficiencies identified in this Memorandum Opinion and Order, and must at a minimum:

(1) address whether the administrative procedures were available to him and exhausted;

(2) describe more fully all actions taken (or not taken) by Defendants that support Plaintiff's claims;

(3) describe in detail the conditions of his unit at VCBC from December 20-23, 2021 that would justify the relief sought;

(4) specify the personal involvement of each individual Defendant in the alleged wrongdoing and any factual basis sufficient to hold the City of New York liable, and

(5) specify whether he suffered physical injury due to Defendants' actions, and if so, what that injury was.

The Clerk of Court is respectfully directed to terminate the motion pending at ECF No. 16 and to mail a copy of this Order to Plaintiff.

Dated: October 31, 2022
New York, New York

SO ORDERED.

*Jennifer Rochon*
JENNIFER L. ROCHON
United States District Judge